UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEBRA CARR,                                    Case No. 17-12009

      Plaintiff,                           Robert H. Cleland
                                               United States District Judge
v.

COMMISSIONER OF SOCIAL                         Stephanie Dawkins Davis
SECURITY,                                      United States Magistrate Judge

      Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkts. 14, 16)**

## I.    PROCEDURAL HISTORY

### A.    Proceedings in this Court

On June 22, 2017, plaintiff Debra Carr filed the instant suit.  (Dkt. 1).

Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge

Robert H. Cleland referred this matter to the undersigned for the purpose of

reviewing the Commissioner's unfavorable decision denying plaintiff's claim for a

period of disability and disability insurance benefits.  (Dkt. 4).  This matter is

before the Court on cross-motions for summary judgment.  (Dkt. 14, 16).

### B.    Administrative Proceedings

Plaintiff filed an application for a period of disability and disability

insurance benefits on July 22, 2014, alleging disability beginning on January 12,

2014.  (Tr. 12).[1]  The claims were initially disapproved by the Commissioner on

December 12, 2014.  (*Id.*).  Plaintiff requested a hearing and on October 16, 2015,

plaintiff appeared with counsel, before Administrative Law Judge ("ALJ")

Virginia Herring Trzaskoma, who considered the case *de novo*.  (Tr. 12-20).  In a

decision dated March 2, 2016, the ALJ found that plaintiff was not disabled.  (Tr.

20).  Plaintiff requested a review of this decision.  (Tr. 7).  The ALJ's decision

became the final decision of the Commissioner when the Appeals Council, on

April 25, 2017, denied plaintiff's request for review.  (Tr. 1-5); *Wilson v. Comm'r*

*of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that

plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for

summary judgment be **GRANTED**, and that the findings of the Commissioner be

**AFFIRMED**.

## II.    FACTUAL BACKGROUND

### A.    ALJ Findings

Plaintiff, born September 26, 1956, was 57 years old on the alleged

disability onset date.  (Tr. 32).  She is a high school graduate who resides with her

husband in Adrian, Michigan, and has past relevant work as a cashier and office

---

[1] The Administrative Record appears on the docket at entry number 12.  All references to the same are identified as "Tr."

worker.  (Tr. 19).  Her last job, which ended January 2, 2014 was as a cashier at

Dollar Tree.  (Tr. 37).  The ALJ applied the five-step disability analysis and found

at step one that plaintiff had not engaged in substantial gainful activity since

January 12, 2014, the alleged onset date.  (Tr. 14).  At step two, the ALJ found that

plaintiff's ischemic heart disease with a history of myocardial infarction,

osteoarthritis, and diabetes mellitus were "severe" within the meaning of the

second sequential step.  (Tr. 14).  However, at step three, the ALJ found no

evidence that plaintiff's impairments singly or in combination met or medically

equaled one of the listings in the regulations.  (Tr. 14-15).

Thereafter, the ALJ assessed plaintiff's residual functional capacity ("RFC")

as follows:

> After careful consideration of the entire record, the
> undersigned finds that the claimant has the residual
> functional capacity to perform light work as defined in 20
> CFR 404.1567(b) in that the claimant can lift and carry
> twenty pounds occasionally and ten pound frequently and
> can sit, stand, and walk six hours in an eight-hour
> workday.  The claimant is further limited in that she can
> frequently climb stairs and ramps, but only occasionally
> climb ladders, ropes, or scaffolds and can occasionally
> crawl.  She cannot work at a production rate pace such as
> that required by an assembly line or conveyor belt.

(Tr. 16).  At step four, the ALJ denied plaintiff benefits because she found that

plaintiff was capable of performing past relevant work as a cashier and office

worker.  (Tr. 19).

B.    Plaintiff's Claims of Error

Plaintiff argues that the ALJ inadequately assessed treating physician Dr. Pappas' medical source opinion.  The ALJ did not credit Dr. Pappas' opinion concerning plaintiff's limitations for the stated reason that it is not supported by sufficient evidence.  (Dkt. 14, p. 9).  According to plaintiff, this conclusory statement is both incorrect and violates the treating physician rule.  Plaintiff contends that the ALJ was required to address the treating physician rule factors and provide "good reasons" for discounting the opinion, but failed to do so. Plaintiff highlights cardiac records which support Dr. Pappas' limitation of standing/walking less than two hours and only sitting for four hours.  (*Id.* at 11-12). Plaintiff also points to examinations indicating disc space narrowing in her neck, ambulation with a guarded gait, and peripheral neuropathy as objective evidence supporting Dr. Pappas' opinion.  (*Id.* at 12).

Plaintiff also argues error in the ALJ's consideration of her bilateral carpal tunnel syndrome and need for leg elevation while seated.  At Step Two the ALJ found plaintiff's carpal tunnel to be a non-severe and not medically determinable impairment.  (*Id.* at 13).  The ALJ did not consider her carpal tunnel again in the decision.  Plaintiff claims error because the ALJ is required to consider all impairments throughout the decision and because plaintiff has consistently complained of hand pain and has indicated difficulty in carrying a gallon of milk.

4

(*Id.* at 14).  Plaintiff asserts that her carpal tunnel syndrome causes limitation in reaching, handling, and fingering.  (*Id.* at 15).

Plaintiff claims the ALJ also should have included a limitation in the RFC indicating the need to elevate her legs while seated.  (*Id.*).  For support, she indicates that she was diagnosed with peripheral neuropathy and Dr. Pappas noted that she requires leg elevation of six inches when seated for a long period.  The vocational expert testified that needing to elevate her legs less than eight inches while seated would be work-preclusive.  (*Id.* at 15-16).

C.    Commissioner's Motion for Summary Judgment

The Commissioner argues that the ALJ properly weighed Dr. Pappas' opinion.  According to the Commissioner, the ALJ did not simply conclude that Dr. Pappas' opinion is not supported by substantial evidence without support. (Dkt. 16, p. 5).  Rather, the ALJ spent two pages immediately preceding the paragraph in which she discounted Dr. Pappas' opinion reviewing the medical evidence; and the ALJ is not required to restate the medical evidence previously discussed.  Further, the medical evidence, which included mild difficulty in movement and normal range of motion and muscle strength, does not support Dr. Pappas' opinion.  (*Id.* at p. 6-8).

Regarding plaintiff's carpal tunnel syndrome, the Commissioner acknowledges the May 2015 diagnosis, but asserts that mere diagnosis says

5

nothing about the severity of the condition.  (*Id.* at p. 9).  The medical evidence does not support the assertion that the condition is severe:  plaintiff was noted to have normal grip strength, could perform orthopedic maneuvers with mild difficulty, and her Tinel's test was negative.  (*Id.* at p. 10).  Other examinations show no abnormality in the use of her hands.  In sum, the Commissioner asserts that plaintiff has not shown that her carpal tunnel syndrome resulted in any functional limitations.

Regarding plaintiff's purported need to elevate her legs while seated, the Commissioner counters by pointing out that the ALJ properly discounted Dr. Pappas' opinion, which included the leg raise limitation.  (*Id.* at p. 10).  Also, plaintiff's past work as an office worker would have allowed her to raise her legs while seated.  Therefore, according to the Commissioner, any error here would be harmless.  (*Id.*).

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious.  *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The administrative process itself is multifaceted in that a state agency makes an initial

6

determination that can be appealed first to the agency itself, then to an ALJ, and

finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is

not found during this administrative review process, the claimant may file an

action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final

administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this

statute is limited in that the court "must affirm the Commissioner's conclusions

absent a determination that the Commissioner has failed to apply the correct legal

standard or has made findings of fact unsupported by substantial evidence in the

record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005);

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding

whether substantial evidence supports the ALJ's decision, "we do not try the case

de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v.

McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383,

387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to

evaluate the credibility of witnesses, including that of the claimant." *Rogers v.

Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc.

Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a

claimant's subjective complaints and may . . . consider the credibility of a claimant

when making a determination of disability."); *Walters*, 127 F.3d at 531

("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial

evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

B.   Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program of Title II (42 U.S.C. §§ 401 *et seq*.) and the Supplemental Security Income Program of Title XVI (42 U.S.C. §§ 1381 *et seq*.). Title II benefits are available to qualifying wage earners who become disabled

prior to the expiration of their insured status; Title XVI benefits are available to

poverty stricken adults and children who become disabled.  F. Bloch, Federal

Disability Law and Practice § 1.1 (1984).  While the two programs have different

eligibility requirements, "DIB and SSI are available only for those who have a

'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  "Disability"

means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a)

(SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in
> substantial gainful activity, benefits are denied without
> further analysis.
>
> Step Two:  If the claimant does not have a severe
> impairment or combination of impairments, that
> "significantly limits ... physical or mental ability to do
> basic work activities," benefits are denied without further
> analysis.
>
> Step Three:  If plaintiff is not performing substantial
> gainful activity, has a severe impairment that is expected
> to last for at least twelve months, and the severe
> impairment meets or equals one of the impairments listed

> in the regulations, the claimant is conclusively presumed
> to be disabled regardless of age, education or work
> experience.
>
> Step Four:  If the claimant is able to perform his or her
> past relevant work, benefits are denied without further
> analysis.
>
> Step Five: Even if the claimant is unable to perform his
> or her past relevant work, if other work exists in the
> national economy that plaintiff can perform, in view of
> his or her age, education, and work experience, benefits
> are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work."  *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step without a finding rejecting the existence of disability, the burden transfers to the Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform

given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at

241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

      C.    <u>Analysis and Conclusions</u>

          1.    Treating Physician

The ALJ gave partial weight to Dr. Pappas' opinion because she found that

the opinion was not supported by sufficient evidence.[2]  Specifically, the ALJ

stated,

> The undersigned gave partial weight to the medical
> source statement provided by Thomas Pappas, M.D.
> (Exhibit 4F).  Dr. Thomas indicated that the claimant
> could lift up to twenty pounds occasionally, could
> stand/walk less than two hours, and did not require a
> sit/stand option (Id.).  He did not address whether the

---

[2] In a footnote the Commissioner expresses skepticism as to whether Dr. Pappas is in fact a treating physician, but declines to press a challenge on that ground.  (Dkt. 16, p. 4, n. 2). Notwithstanding the stated skepticism, the Commissioner went on to analyze the opinion under the treating physician rule.  Therefore, the undersigned will follow suit. Moreover, based on Dr. Pappas' record of treating plaintiff on four occasions concerning her cardiac issues, which were not detected until June of 2015, treating him as a treating physician is likely appropriate.  *See Mitchell v. Comm'r of Soc. Sec.*, 2015 WL 3454743, at *6-7 (N.D. Ohio May 29, 2015) (Finding doctor who examined and treated plaintiff four times in six months was a treating source in light of case law establishing that two or three visits is not sufficient to find a treating relationship); *Smith v. Comm'r of Soc. Sec.*, 2012 WL 1665513, at *14, n. 16 (S.D. Ohio May 11, 2012) (Finding a treating relationship where doctor treated plaintiff four times before issuing his opinion); *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 507 (6th Cir. 2006) ("[A] plethora of decisions unanimously hold that a single visit does not constitute an ongoing treatment relationship....  Indeed, depending on the circumstances and the nature of the alleged condition, two or three visits often will not suffice for an ongoing treatment relationship."); *Willis v. Comm'r of Soc. Sec.,* No. 12-10011, 2012 WL 7608133, *9 (E.D. Mich. Oct., 29, 2012) (treating relationship was not established after plaintiff saw physician only two times before opinion was issued); *Helm v. Comm'r of Soc. Sec.*, 405 Fed. Appx. 997, 1000 n.3 (6th Cir. 2011) ("[I]t is questionable whether a physician who examines a patient only three times over a four-month period is a treating source—as opposed to a nontreating (but examining) source."); *Yamin v. Comm'r of Soc. Sec.*,67 Fed. Appx. 883, 885 (6th Cir. 2003) (doctor who examined claimant on only two occasions did not have a long term overview of claimant's condition).

claimant would likely be "off-task" because of her impairments, and circled "psychological preoccupation," from which the undersigned infers that Dr. Pappas considered this a factor based upon his indication that the claimant's prognosis was good (Id.). The undersigned does not credit Dr. Pappas' opinion that the claimant's condition should require environmental restrictions, postural limitations for stooping, crouching, twisting, and that could stand/walk less than two hours, as there is insufficient evidence to support these limitations.

(Tr. 18-19). In his opinion, Dr. Pappas identified fatigue as plaintiff's only symptom due to "MI Classification = 1,"[3] and gave the following exertional limitations: stand/walk for less than two hours; sit about four hours; elevate legs six inches above the floor while seated; occasionally lift 20 pounds; occasionally twist, stoop, and crouch; and rarely climb ladders or stairs. (Tr. 292-93). He also opined that plaintiff should avoid concentrated exposure to a long list of environmental irritants, such as extreme heat and cold. (Tr. 293).

The opinion of a treating physician should be given controlling weight if it is: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques," and (2) "not inconsistent with the other substantial evidence in [the] case record." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); 20 C.F.R. § 404.1527(c)(2). Once an ALJ has determined that a treating source opinion is not entitled to controlling weight, the ALJ must give good reasons for

---

[3] This notation apparently means a diagnosis of class 1 myocardial infarction. (Dkt. 16, at p. 4); (Tr. 316) (testing suggests myocardial infarction).

13

the weight accorded to the opinion.  The reasons provided must be supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.  *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013).  The ALJ is to discuss certain factors, which include, (1) the length of the treatment relationship and frequency of examination, (2) the nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, and (5) the specialization of the treating source.  *Id.; see also Wilson,* 378 F.3d at 544; 20 C.F.R. § 404.1527(c).  Failure to analyze a treating source opinion under the two-prong controlling weight test amounts to the failure to provide good reasons for giving that opinion less than controlling weight.  *Gayheart* at 376-77.

"Violation of the rule constitutes harmless error if the ALJ has met the goals of the procedural requirement—to ensure adequacy of review and to permit the claimant to understand the disposition of his case—even though he failed to comply with the regulation's terms."  *Coldiron v. Comm'r of Soc. Sec.*, 391 Fed. Appx. 435, 440 (6th Cir. 2010) (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004).  An ALJ may meet those goals by indirectly attacking the supportability of the treating physician's opinion or its consistency with other evidence in the record.  *See Nelson v. Comm'r of Soc. Sec.*, 195 Fed. Appx. 462,

470-72 (6th Cir. 2006) (no error in ALJ's failure to explain weight given to two treating physicians or failure to give good reasons for discounting them where ALJ thoroughly explained other medical evidence that indirectly attacked the consistency of the treating physicians' opinions).  In *Coldiron*, the court held that even if the ALJ's stated reasons for rejecting a physician's opinion were not "good reasons," the ALJ sufficiently indirectly attacked the supportability and consistency of the opinion such that any error was harmless.  391 Fed. Appx. at 440-41.  The court found that the ALJ indirectly attacked the consistency of the opinion that the plaintiff could not lift or carry any weight at all, when the ALJ explained that the state agency physicians found that the plaintiff lacked a "diminished capacity for lifting/carrying."  *Id.*  And although the physician stated that plaintiff could walk for only twenty minutes in an eight-hour workday and his ability to sit was limited, other medical evidence showed that he could stand and sit for six hours out of eight.  *Id.* at 441.  Further, the plaintiff's own statements also undermined the doctor's opinion.  *Id.*

Here, to be sure, the ALJ did not engage in a sustained discussion of Dr. Pappas' opinion on plaintiff's limitations before summarily concluding that "there is insufficient evidence to support these limitations."  The ALJ did not directly address whether the opinion was well-supported by medically acceptable clinical and laboratory diagnostic techniques or whether it was inconsistent with the other

substantial evidence in [the] case record.  However, while the ALJ's treating

physician analysis may have fallen short in its articulation, the undersigned finds

that any error is harmless under the principles set forth in *Coldiron*.  This is so

because the ALJ's examination and discussion of the record evidence is sufficient

to indirectly attack both the supportability of Dr. Pappas' opinion and its

consistency with the medical evidence.  For example, while Dr. Pappas gave

plaintiff exertional and postural limitations such as occasionally twisting, stooping,

and crouching; rarely climbing ladders or stairs; standing/walking less than two

hours; and sitting for only about four hours in a workday, the record evidence cited

and discussed by the ALJ paints a different picture of plaintiff's abilities.[4]  For

instance, in April and June 2015, plaintiff was noted to have normal range of

motion in all of her joints, and normal muscle strength and tone.  (Tr. 263, 266,

270, 274).  In her July 2015 follow-up examination after her June hospitalization,

her physician noted that plaintiff was "not feeling tired or poorly," and her

musculoskeletal findings indicate no arthralgia, no soft tissue swelling, no

localized joint swelling, and no localized joint stiffness.  (Tr. 328).  In her July

2015 follow-up exam with Dr. Pappas, he noted no musculoskeletal problems, no

---

[4] It is unclear from Dr. Pappas' opinion why fatigue caused by plaintiff's medication would cause limitations in such physical activities as sitting, twisting, stooping, or climbing stairs, for example.  Limitations in these physical activities, as demonstrated herein, are not supported in the record.

16

change in plaintiff's exercise tolerance, and no problems with her extremities.  (Tr. 353-54).  Further, plaintiff's physicians recommended exercise for thirty minutes a day on numerous occasions, (Tr. 264, 267, 271, 274, 275, 333, 340) and Dr. Pappas noted no change in her exercise tolerance in his follow-up exam (Tr. 353).

The ALJ also discussed consulting physician Dr. Lazzara's November 2014 record which indicated that plaintiff had no difficulty getting on and off the examination table, mild difficulty heel and toe walking, mild difficulty squatting, and mild difficulty standing on either foot.  (Tr. 257).  Dr. Lazzara further noted that, while plaintiff "compensates with a guarded gait," she appeared relatively stable and recommended continued activity.  (Tr. 260).  Objective testing showed that her Tinel's sign and straight leg testing were both negative, and there was no paravertebral muscle spasms.  Furthermore, plaintiff's motor strength was intact, her muscle tone was normal and her range of motion statistics were all within normal limits.  (Tr. 257-259).  These records do not support limitations in standing, walking, siting, bending, stooping, carrying, or climbing stairs,[5] and thus do not support and are inconsistent with Dr. Pappas' opinion.

Plaintiff's examinations after her cardiac diagnosis in June 2015 also do not support the opinion that plaintiff is so functionally limited by fatigue that she

---

[5] The undersigned notes that there are no records which state that plaintiff's impairments are as limiting as what Dr. Pappas states.

cannot work.  In her July 2015 follow-up examination after her June

hospitalization, plaintiff's heart rate and sounds were normal.  (Tr. 328).  Again, in

the July 2015 post-hospitalization follow-up, her physician noted that she was not

feeling tired.  (Tr. 328).  In her follow-up exam with Dr. Pappas (also in July

2015), he noted normal rhythm, S1 and S2 were normal, there were no S3 or S4,

and no murmurs.  (Tr. 354).  In this follow-up report, Dr. Pappas stated that

plaintiff's cardiac catheterization showed a totally occluded right coronary with

left-to-right collateralization, but noted that plaintiff reported feeling fine, she had

no chest pain or shortness of breath, and recorded no change in exercise tolerance.

Her only complaint was fatigue, which Dr. Pappas attributed to her medication.

(Tr. 353, 292).  These normal findings do not support the opinion that plaintiff is

more functionally limited than contemplated in the RFC, and thus, do not support

Dr. Pappas' opinion.[6]

The ALJ's discussion of the record evidence, as recounted above,

sufficiently indirectly undermines the supportability of Dr. Pappas' opinion such

that the ALJ has met the goal of the regulation— to ensure adequacy of review and

to permit the claimant to understand the disposition of his case.  *See Coldiron*, 391

---

[6] The undersigned also notes internal inconsistency within the opinion.  Dr. Pappas
opined that plaintiff would need to take unscheduled breaks during a workday.  (Tr. 293).  Yet,
the form on which Dr. Pappas rendered his opinion next asks how often plaintiff would need to
take these breaks.  Dr. Pappas noted "N/A."  (*Id.*).  The answer to the follow-up question
indicates that plaintiff does not need unscheduled breaks during the workday.

Fed. Appx. at 440.  In light of the lack of support for the opinion and the inconsistency of the opinion with the remaining record evidence, the undersigned finds that the ALJ's weight determination here is supported by substantial evidence, and that remand is not required.

### 2.    Step Two

Plaintiff argues error in the ALJ's failure to consider her carpal tunnel syndrome and peripheral neuropathy to be severe impairments.  Under the regulations, the ALJ must consider whether a claimant's impairment is a medically determinable impairment at Step Two.  *See* 20 C.F.R. § 404.1520.  A medically determinable impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities, which can be shown by medically acceptable clinical and laboratory diagnostic techniques."  *Jones v. Comm'r of Soc. Sec.*, 2017 WL 540923, at *6 (S.D. Ohio Feb. 10, 2017), *report and recommendation adopted sub nom. Jones v. Berryhill*, 2017 WL 1196179 (S.D. Ohio Mar. 31, 2017) (citing 20 C.F.R. §§ 404.1505, 404.1508, 404.1520(a)(4)(ii) and 404.1527(a)(1)).  "Therefore, a physical or mental impairment must be established by objective medical evidence from an acceptable medical source.  We will not use your statement of symptoms, a diagnosis, or a medical opinion to establish the existence of an impairment(s)."  20 C.F.R. § 404.1521; *see also Tolbert v. Comm'r of Soc. Sec.*, 2012 WL 4176876, at *4 (E.D. Mich. Aug. 27,

2012), *report and recommendation adopted*, 2012 WL 4165649 (E.D. Mich. Sept. 18, 2012) (citing Social Security Ruling 96-4p, 1996 WL 374187 at *1) ("A diagnosis establishes medically determinable impairment only where it is supported by objective medical evidence.").

Also at step two of the sequential evaluation, the ALJ must consider whether a claimant's medically determinable impairment is a severe impairment and whether the impairment(s) meet the twelve month durational requirement in 20 C.F.R. § 404.1509. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see also Simpson v. Comm'r of Soc. Sec.*, 344 Fed. Appx. 181, 188 (6th Cir. 2009). The applicant bears the burden of establishing the existence within the administrative record of objective medical evidence suggesting that the applicant was "disabled" as defined by the Act. In order to be classified as severe, an impairment or combination of impairments must significantly limit the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). Basic work activities, defined in the regulations as "the abilities and aptitudes necessary to do most jobs," include: (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6)

dealing with changes in routine work settings.  An ALJ's failure to find an

impairment severe at step two of the sequential analysis is not reversible error if

the ALJ found another impairment severe and thus continued with the five-step

evaluation.  *See e.g.*, *Fisk v. Astrue*, 253 Fed. Appx. 580, 584 (6th Cir. 2007);

*Anthony v. Astrue*, 266 Fed. Appx. 451, 457 (6th Cir. 2008).

Here, the ALJ continued with the five step analysis, having found several of

plaintiff's impairments to be severe, and—contrary to plaintiff's contention—

examined plaintiff's carpal tunnel syndrome and peripheral neuropathy in

assessing the RFC. Specifically, the ALJ discussed medical findings which show

synovial thickening of the wrists as well as degeneration in the wrists, but that her

grip strength remained intact and the Tinel's sign test was negative.  (Tr. 17, 257).

Further, plaintiff was able to pick up a coin, button clothing, and open a door.

(*Id.*).  The ALJ also noted that Dr. Lazzara found that plaintiff was able to perform

orthopedic maneuvers with mild difficulty, which appeared to be due to her

neuropathy.  However, continued activity was indicated.  (Tr. 18, 260).

Having discussed the effect of these impairments on plaintiff's functioning later in

the decision, any error in not determining that these impairments are severe is not

reversible.  *Fisk*, 253 Fed. App. At 584; *Cobb v. Colvin*, 2013 WL 1767938 at *4

(D. Kan. 2013) ("The Commissioner is correct that the failure to find that

additional impairments are severe is not in itself cause for reversal.  But this is true

only so long as the ALJ considers the effects of all of the claimant's medically determinable impairments, both those he deems severe and those not severe.") (internal quotation marks omitted).

Moreover, plaintiff has pointed to no evidence of functional limitations caused by these impairments that are greater than or not already accounted for in the RFC.  Instead, she points to her diagnosis of bilateral carpal tunnel syndrome (Tr. 263), a notation of synovial thickening (Tr. 257), and her complaints[7] of hand pain and difficulty in carrying a gallon of milk.  (Dkt. 14, pp. 13-14). Consequently, even if the ALJ were to have determined that those conditions were severe impairments, remand for further analysis would be futile.  *See Easterday v. Comm'r of Soc. Sec.*, 2016 WL 5422101, at *8 (E.D. Mich. Aug. 19, 2016) (finding no reversible error in ALJ's decision that diagnosed depression was not a medically determinable impairment because the "existence of a diagnosis [did] not suggest functional limitations.  Indeed, plaintiff bears the burden of proof at step two and has not come forward with any evidence of mental impairment that is more than a 'slight abnormality that minimally affects work ability regardless of age, education, and experience.'") (citing *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988)); *see also Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211,

---

[7] The ALJ found plaintiff's complaints to be "not entirely credible."  (Tr. 17).  Plaintiff does not challenge the credibility determination.

213-214 (6th Cir. 1986) (a diagnosis unaccompanied by supporting clinical data is insufficient to support a finding of a severe impairment).  Plaintiff's failure to adduce evidence in the record supporting an RFC with more severe functional limitations resulting from or related to her carpal tunnel syndrome or peripheral neuropathy is fatal to her argument.  *See Hill v. Comm'r of Soc. Sec.*, 560 Fed. Appx. 547, 551 (6th Cir. 2014) ("[D]isability is determined by the functional limitations imposed by a condition, not the mere diagnosis of it."); *Townsend v. Astrue*, 2013 WL 687042, at *5 (D. Or. Feb. 25, 2013) (failure to discuss a diagnosis is error, but harmless where record does not reveal any limitations due to the diagnosed condition).  Plaintiff's failure to adduce such evidence is likely due to the fact that there is no medical record or opinion discussing functional limitations caused by these impairments.  (*See* Tr. 288, where Dr. Landan discusses the diagnoses of these two impairments ("moderate in severity") but does not opine on any functional limitations).

The result is same for plaintiff's argument that the RFC should include a limitation for leg elevation.  (Dkt. 14, at p. 15-16).  While Dr. Pappas opined that plaintiff would need to elevate her legs while seated, as discussed above, the ALJ's discounting of Dr. Pappas' opinion was supported by substantial evidence. Further, aside from plaintiff's own statement that she elevates her legs while seated, there is no other medical record or opinion discussing leg elevation or

23

opining that plaintiff needs to elevate her legs while seated.  *Richard v. Astrue*,
2011 WL 4688788, at *5 (N.D. Ohio Oct. 4, 2011) (citing *Young v. Sec'y of Health
& Human Servs*., 925 F.2d 146,151 (6th Cir. 1990) ("it is well established that
a diagnosis alone does not indicate the functional limitations caused by an
impairment."); *Kocher v. Comm'r of Soc. Sec*., 2015 WL 7307998, at *5 (S.D.
Ohio Nov. 20, 2015), *report and recommendation adopted*,  2015 WL 9489750
(S.D. Ohio Dec. 30, 2015) (quoting *Burch v. Barnhart*, 400 F.3d 676, 684 (9th Cir.
2005) ("when 'there is no evidence in the record, of any functional limitations as a
result of . . . obesity that the ALJ failed to consider,' a remand for further
resolution of this issue is unnecessary.").  Without any evidence of functional
limitations, there is no error where the RFC does not include such functional
limitations.  For example, in *Morrison v. Comm'r of Soc. Sec*., 2017 WL 4278378
(6th Cir. Jan. 30, 2017), the court discussed the lack of medical evidence on
functional limitations from neck and back pain.  *Id.* at* 3.  The record contained
evidence of slight abnormalities in the spine and of occasional reports of neck and
back pain.  *Id.*  However, there was no evidence that those conditions debilitated
the plaintiff in any way or that any physician imposed any limitations as a result of
the conditions.  *Id.*  "Thus, the absence of any limitation in the RFC to account for
this impairment is supported by substantial evidence."  *Id.*

Because there is no record evidence suggesting functional limitations caused by carpal tunnel syndrome, peripheral neuropathy, or a need to elevate her legs, the ALJ's failure to account for these impairments in the RFC is not error.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, and that defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: August 16, 2018                    s/Stephanie Dawkins Davis
                                         Stephanie Dawkins Davis
                                         United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on August 16, 2018, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record.

                                         s/Tammy Hallwood
                                         Case Manager
                                         (810) 341-7850
                                         tammy_hallwood@mied.uscourts.gov

26